Diane R. Gochin
931 Thrush Lane
Huntingdon Valley, PA 19006
215-287-1609
Plaintiff in Propria Persona

| | |
|---|---|
| **DIANE R. GOCHIN,**<br>**PLAINTIFF**<br>**v.**<br><br>**JUDGE RICHARD HAAZ (individually and**<br>**in his official capacity),**<br><br>**PAUL TROY, Esq (individually and in his**<br>**capacity as an Officer of the Court),**<br><br>**RANDEE FELDMAN, Esq. (individually and**<br>**in her capacity as an Officer of the Court),**<br><br>**COUNTY OF MONTGOMERY,**<br>**Norristown, Pennsylvania**<br><br>**DEFENDANTS** | **UNITED STATES DISTRICT COURT**<br>**EASTERN DISTRICT OF**<br>**PENNSYLVANIA**<br><br>**CIVIL ACTION - LAW**<br><br>**DEMAND FOR TRIAL BY JURY**<br><br>**Declaratory Relief**<br>**and Monetary Damages**<br><br>**No.**<br>**16      5359** |

## Table of Contents

| Section | Page |
|---|---|
| I.  Statement of Venue | 2 |
| II.  Statement of Jurisdiction | 2-3 |
| III. Parties | 3 |
| IV.  Statement in Demand for Jury Trial | 4 |
| V.  Preliminary Statement | 4-6 |
| VI.  COMPLAINT | 6-26 |
| VII.  Counts I through IV  - Claims Against All Defendants | 26-30 |
| Signed Verification | 31 |
| Exhibits A through R Descriptions  & Attached | 31 |

**AND NOW** comes the Plaintiff, Diane R. Gochin, individually, and in support of her Complaint against the Defendants, avers as follows:

## I. Statement of Venue

Plaintiff is a natural born citizen of the United States and a resident of Montgomery County, Pennsylvania, that falls within the U.S. District Court of the Eastern District of Pennsylvania. All Defendants serve in, and/or are employed or have their place of business in Montgomery County, Pennsylvania.

## II. Statement of Jurisdiction

Plaintiff invokes the jurisdiction of the Federal Court pursuant to:

> "Title 42 U.S.C. § 1983, which authorizes a suit in equity to redress the deprivation under color of state law "of any rights, privileges, or immunities secured by the Constitution . . " is within that exception of the federal anti-injunction statute, 28 U.S.C. § 2283, that provides that a federal court may not enjoin state court proceedings "except as expressly authorized by Act of Congress." **Mitchum v. Foster, 407 U.S. 225 (1972)**

**And further pursuant to the following:**

**U.S. Constitution Seventh Amendment - Right to Trial By Jury**

**Pennsylvania Constitution Article 1- Declaration of Rights, Section 6 –Trial by Jury**

**28 U.S. C. § 1331 - Federal Question**

**42 U.S.C. § 1981 -Equal Rights Under The Law**

**42 U.S.C. § 1983 - Civil Action For Deprivation Of Rights**

**42 U.S.C. § 1985 - Conspiracy to Interfere with Civil Rights at (2) (3)**

**42 PaC.S.A. § 8522(3) – Exceptions to Sovereign Immunity**

**Corresponding Criminal Law:**

**18 U.S.C. 1964 - Civil RICO**
**18 Pa. Cons. Stat. Ann. § 911 - Corrupt Organizations Act**
**18 U.S. Code § 1512 - Tampering with a witness, victim, or an informant**
**18 U.S.C § 241 - Conspiracy Against Rights**
**18 U.S. Code § 371 - Conspiracy to commit offense or to defraud United States**
**18 U.S.C. § 1503 - Influencing Or Injuring Officer Or Juror Generally**
**18 U.S.C. § 1509 - Obstruction of Court Orders**
**18 U.S.C. §201 - Bribery of Public Officials and Witnesses**
**18 U.S. Code § 1346 –Definition of "scheme or artifice to defraud- Honest Services Fraud"**

## III. Parties

**Plaintiff   Diane R. Gochin**, is an adult individual residing at 931 Thrush Lane, Huntingdon Valley, PA 19006, in Montgomery County.

**Defendant Judge Richard Haaz**, is an adult individual, and as elected to the Court of Common Pleas in Montgomery County Pennsylvania, located at 2 East Airy St., Norristown, PA 19401.

**Defendant Paul Troy, Esq.** is an adult individual, and a licensed attorney in Pennsylvania of the Montgomery County law firm of Kane, Pugh, Knoell, Troy and Kramer located at 510 Swede St., Norristown, PA 19401.

**Defendant Randee Feldman, Esq.** is an adult individual and a licensed attorney in Montgomery County, Pennsylvania in sole practice, whose office is located at 1 Bala Ave, GSB Building, Suite 605, Bala Cynwyd, PA 19004.

**Defendant Montgomery County**, Pennsylvania, One Montgomery Plaza, Norristown, PA 19404

## IV.  Statement in Support of Demand for Jury Trial

Due to the nature of this case, there are inherent conflicts of interest of any individual having a vested interest in the legal industry, for reasons that will become clear throughout the Complaint.

The Seventh Amendment of the U.S. Constitution and the Pennsylvania Constitution Article 1 § 6 guarantees the right to jury trial for any amount over $20 is inviolate. Plaintiff has been subjected to abuse of pretrial motions that obstruct this right and enable manipulation of cases.   It is alleged that the modern rules that have increased personal discretion to deny civil jury trials, is a major source of the judicial corruption from which this nation is now suffering. The Founders of this country put those provisions in our Constitution as the institutional check against abuse of power, and those powers have become become so abusive that they created "rules"  that are unconstitutional and in violation of U.S. Supreme Court holdings such as Miranda v. Arizona -  384 U.S. 436 (1966) which holds that *"Where rights secured by the Constitution are involved, there can be no rulemaking or legislation which would abrogate them."*

## V.  Preliminary Statement

The gravamen of the complaint against Defendant Randee Feldman, Esq. (herein "Defendant Feldman"). Paul Troy, Esq (herein "Defendant Troy"), and Judge Richard Haaz (herein "Defendant Judge") is that the Defendants individually and collectively, have engaged in a course of conduct, through a series of continuing violations, that are effectively crimes under color of law, conspiracy, fraud, undue influence of a judge, witness intimidation, abuse of

Montgomery County Court of Common Pleas against Defendant Randee Feldman (Exhibit A - Montco #2011-25251), incorporated by reference as if fully set forth herein. That action which in itself was based on abuse of process and tortuous interferences, arose out of the Plaintiff's divorce litigation (Exhibit B - Montco 2007-12909). This is not a re-litigation of either Montgomery County case. The material evidence and series of events contained herein show without a doubt, that due to the nature of the claims, these Defendants as court officials, conspired to thwart the Plaintiff's case against Defendant Feldman, which had the ability to set legal precedent. That precedent could affect the profits of the legal and liability insurance industries, and damage professional reputations, especially if a *pro se* litigant were to prevail.

The composing of this instant Complaint required the painful revisiting of the cumulative facts, bringing a shocking realization as to the extent of the premeditation and scam perpetrated upon the Plaintiff. There is no justification for any divorce litigation to be protracted for ten years, let alone one where there were no custody issues. Plaintiff has been denied jury trials and appellate review for almost a decade- in both underlying cases in what she alleges is a culture of collusion in all levels of the Pennsylvania courts, directed against those that are self-represented, in particular. She has been compelled to represent herself in the divorce, an unnecessary mortgage foreclosure, a federal lawsuits and the case against Defendant Feldman, who as counsel for the ex-husband, assisted in what is in effect "stalking by litigation."( Sutherland, T.J. (2004). "High Conflict Divorce or Stalking by Way of Family Court? - A Case Study,". Massachusetts Family Law Journal, 22(1&2) 4-16).

Plaintiff had come to this Federal jurisdiction on or about 2012, where her *pro se* complaint under 42 USC §1983 against the judge in the divorce action as a *pro se,* was targeted for dismissal before response by the Defendants. Had the issue received the due process that it

deserved, this complaint would not have been necessary and five more years of the Plaintiff's life would not have been destroyed. In fact, the injustices alleged in that complaint, were eventually validated a year later, when the Pennsylvania Judicial Conduct Board, under new leadership, intervened and the Defendant Judge recused, but irreparable damage was already done.

Since 2007, the immense amount of fruitless labor in the struggle for justice, has completely consumed the life of the Plaintiff, destroyed the standard of living of her children and has caused daily emotional distress. In the Federal Judiciary 2015 Annual Report, U.S. Supreme Court Chief Justice John Roberts essentially acknowledged the morally bankrupt culture of today's legal industry, and he gracefully does not divest judges from blame, in his understatement which aptly describes the conduct of Defendants Troy and Feldman and the complicity of the Montgomery County Court:

*"It will also require a genuine commitment, by judges and lawyers alike, to ensure that our legal culture reflects the values we all ultimately share..... As for the lawyers, most will readily agree—in the abstract—that they have an obligation to their clients, and to the justice system, to avoid antagonistic tactics, wasteful procedural maneuvers, and teetering brinksmanship....**I am hardly the first to urge that we must engineer a change in our legal culture that places a premium on the public's interest in speedy, fair, and efficient justice."***

## VI. COMPLAINT

### Background

1.     To reach their goal of thwarting the underlying case, the objective of all Defendants was to block a trial by jury and circumvent the "law of the case" set by the original judge assigned the case, the Honorable Wendy Demchick-Alloy. Defendants Troy and Feldman filed a total of nine

motions to dismiss the Plaintiff's complaint for legal insufficiency after the claims had already been sustained as valid by the Judge Demchick-Alloy; then four protective orders to avoid depositions; two Petitions for Default Judgment on a Counterclaim which had no legal standing and which they later withdrew; and they did not show up for a scheduled deposition. They also called the Plaintiff's witness and frightened her out of testifying, which was not discovered until eight months later. All of this in conspiracy with Defendant Judge, who used trial scheduling as a ploy to manipulate and get discovery from the Plaintiff for the Defendants, while never allowing the Plaintiff any discovery. Defendant Judge then canceled the trial schedules, and violated the "law of the case doctrine" by granting a Judgment on the Pleadings and a Default Judgment on the Counterclaim which the Defendants then withdrew. The Plaintiff's appeals were quashed as interlocutory based on all the Defendants claiming the Defendant Judge's Orders were not final because they had not yet had a hearing on their damages relevant to their Counterclaim, which no longer exists. Defendant Judge denied a motion to reopen the Judgment. The case is still open on appeal (Exhibit A). The Plaintiff does not believe due process is available in the Pennsylvania State courts due to the nature of the case.

2.      On October 5, 2015, Montgomery County Court released a self-incriminating public announcement in the renowned publication "The Legal Intelligencer." (Exhibit C)   They announced a "back log" of 5000 pending cases, placing the blame on their "attorney-driven" system, with pretext of how it is now being converted to a "court-driven' system.  This was obviously a response to the mass of allegations of racketeering through individual professional conduct complaints and in social media.  It stands to reason, attorneys were never allowed to "drive" the litigation process, as they have an inherent conflict of interest with the hourly billing system.

3.      It is the duty of the judge to control their courts. To an educated public, the pretextual county declaration in the Legal Intelligencer was just a sugar-coating to conceal their complicity in the destruction of thousands of lives over the course of decades that forced people into bankruptcy and homes into foreclosure, mainly through the family courts.. The Plaintiff is one of those who were victimized by the civil servants of that Court and its members who enriched themselves by using their positions to extort assets, facilitated by Judges whom they funded via their election campaigns.

4.      Plaintiff alleges it was no coincidence that Defendant Judge acting in administrative capacity, was chosen to supervise the "disposing" of those thousands of mishandled cases and a new program that professes to assist in mortgage foreclosures, that likely resulted from the County court wrongdoing  The diplomatic understatement above by the Chief Justice, aptly described the systemic, ethical deficits in the Montgomery County.

5.      When filing for divorce, citizens are forced to do it through court system. There assets then come under the control of the government.  However, instead of being an agency that is focused on the welfare of the families and fulfilling their obligations under Pennsylvania Title 23 to mitigate the harm to the families, Montgomery County has turned the justice system into a feeding frenzy on unsuspecting citizens.

6.      It is necessary to present the legal environment or rather lack thereof in this case, that would allow what is contained herein to occur, and paint a picture of how an outsider, i.e. a *pro se* litigant like the Plaintiff, now experiences the "justice" system, thanks to the new digital era. It can no longer be put forth to the public, that they are receiving equal treatment under the law in the current system.

7.      There were multiple conflicts of interest between the judges and lawyers uncovered, in the ten years the Plaintiff has been trapped in litigation.  In the Plaintiff's 2012 federal complaint

noted above, there were allegations of inappropriate actions between Defendant Feldman and a Montgomery County common pleas judge, for interference with negotiation of payments to High Swartz LLC, a law firm that had briefly represented the Plaintiff in her divorce. Paul Bartle, Esq. who was the managing partner of that law firm, was involved in those negotiations, and is the brother of The Honorable Harvey Bartle, III of this Federal court, a fact that was unknown to the Plaintiff at that time. It is believed he may have been consulted with in the immediate dismissal of that complaint.

8. Defendant Troy is Counsel for Defendant Feldman in the civil action by Plaintiff against her (Exhibit A), and was so during the time of the above filed Federal complaint.      Defendant Troy's office is adjacent to the Montgomery County Court house  and in very close proximity to Paul Bartle's firm of High Swartz LLC. Defendant Troy is also obviously quite familiar with The Honorable Harvey Bartle, III, as he was appointed by him to serve as a member of the Magistrate Judge and Merit Selection Panel for that Court in 2007.

9. Defendant Troy's practice has been dominated by legal malpractice defense, for which the county bar awarded him Trial Lawyer of the Year in 2011. This would make Defendant Troy particularly sensitive to being defeated by a *pro se* litigant, especially where the decision could affect his peers in the legal industry. The Senior Partner of Defendant Troy's law firm, William Pugh, is the current President of the Pennsylvania Bar Association, to which both state and federal judges are members.

10. Since 2009, Defendant Troy has served or is currently serving as President of the Montgomery County Bar, President of the Montgomery County Trial Lawyers Section, Director of the Montgomery Bar Association, Chair or Co-Chair of the Montgomery County Bar Insurance Committee,  President of the Pennsylvania Bar Institute,  Chair of the House of Delegates of the Pennsylvania Bar Association, on the Pennsylvania Bar Association Board of

Governors, Co-Chair of the PBA Bar Leadership Institute and is a life fellow of the Pennsylvania Bar Foundation, and served on the PBA Board of Directors.

11.    Defendant Judge, currently presides over the Plaintiff's civil action against Defendant Feldman (Exhibit A). Defendant Judge has practiced law in the county for approximately 30 years, and served on the hearing committee for the Attorney Disciplinary Board of the Pennsylvania Supreme Court (where Plaintiff had submitted two complaints against Defendant Feldman prior to 2011), and as a Chairman of the Medical/Legal Committee for the Montgomery County Bar Association. Defendant Judge began serving on the bench in the Court of Common Pleas in 2012, after he ran for the judicial office twice, losing at his first attempt in 2009, his campaign funded by bar members.

12.    Plaintiff alleges that on or about January 2013, either Defendant Troy or someone at his law firm orchestrated the removal of the first judge, Wendy Demchick-Alloy, after she sustained the majority of causes of action by the Plaintiff, and denied three demurrers by the Defendants.

13.    As the President Judge, William Furber would have been the authority that could reassign a judge. Defendant Judge was assigned the case in January 2013, and has presided over the case since then. In ten years of Plaintiff's litigations only two judges were changed - one for retirement and the involuntary recusal of the other. Judge Furber claimed in a letter to Plaintiff, that Judge Demchick-Alloy was rotated off civil trials in the normal two years; however, Defendant Judge has been on the case now into its fourth year and Judge Kelly Wall had remained on the divorce for four years until forced off, so apparently there was no mandatory two-year rotations.

## Summary of the Misconduct in the Divorce Action

14.    Plaintiff filed for divorce on June 4, 2007, in Montgomery County, from her husband of 19 years. (Exhibit B) There were no custody issues, although they have three children who were

minors at the time of the filing. One of the children is mentally challenged from birth, and will always need close support of his family.

15.     At the time of filing for divorce, the marital estate was financially solvent, there was minimal debt, they owned a business and two cars- all free and clear- along with a primary home and vacation property both with sizeable equity, and the parties had excellent credit. The home is now in foreclosure, the Plaintiff is in insurmountable debt, and her credit, which is now included in employment background checks, and destroyed by the Defendant, is precluding her from obtaining another job since she was laid off in October 2014.

16.     Yet Defendant Judge, as you will see, decides without any evidentiary hearings, "there was no damage done" by the actions of the Defendant in the divorce. However, those claims are not at issue in this instant complaint. It is his own conduct, with Defendants Troy and Feldman, during the litigation and not in the Divorce itself that defy his oath of office and any adherence to the law.

17.     Plaintiff has been representing herself in both her divorce since approximately 2009, and in the case against Defendant Feldman since 2011, after her funds were intentionally dissipated by Defendant Feldman, who has been represented the ex-husband since 2007.   Plaintiff's previous attorney is a witness to this allegation and complaints by her are included as evidence in the case against Defendant Feldman.

18.     During this time, Plaintiff alleges that Feldman facilitated "stalking by litigation" through intentionally protracting the matter, committed perjury, fraudulently issued defective escrow checks, converted funds, requested unsubstantiated continuances, and machinated the dissipation of the marital estate, in a conspiracy with her mentally-unstable client.

19.     Among Plaintiff's allegations are that Defendant Feldman and her client concealed a fraudulent transfer of the family business, produced bogus W-2s to defeat child support, and

embezzled funds from business trust accounts during the divorce process. The embezzlement resulted in a federal judgment against the Plaintiff as a guarantor, for funds to which she had no access.

20.     Plaintiff had liquidated a vacation property and in good faith put the funds in escrow with the stipulation that the outstanding credit card bills be paid. Defendant reneged on that arrangement that had been made with Plaintiff's previous attorney. Defendant Feldman intentionally destroyed the Plaintiff's credit. This also precluded the Plaintiff's children from obtaining loans to attend college. The Defendant and her mentally unstable client, further drove the home into foreclosure over a simple signature that would have actually benefited the entire family, and since 2009, there has been $3000 missing, from the escrow account for a business valuation that was never produced by the Defendant.

21.     Plaintiff met with members of the Judicial Conduct Board on June 7, 2013, regarding her complaint against the presiding Judge Kelly Wall and her collusion with the Defendant Feldman. Over four years, she allowed the Defendant to obstruct the hearing for an innocuous mortgage modification, and never reported the overdue disposition to the AOPC under P.R.C.P 703, among other violations of the rules of conduct. Wall recused pursuant to the intervention by the JCB, on August 21, 2013. (Exhibit B et seq. 416 ).

22.     Plaintiff received information that Defendant Feldman had a federal criminal indictment, which may have been substantiated had the discovery process been enforced by Defendant Judge, the case against Defendant Feldman.       There were three requests for equitable distribution to be scheduled by the Plaintiff during the first eight years of the divorce proceedings, all impeded by the machinations of the Defendant.

23.     After two more years under a new judge, and with Defendant Judge administratively disposing of cases, the equitable distribution was scheduled for October 2015. However, there is

no longer a marital estate, the Plaintiff's home is in foreclosure and she nothing from what was approximately a net worth of $500,000. There were other procedural issues, along with false statements and documents on the record presented by Defendant Feldman, of which those matters are now open on appeal.   However, the estate is now unrecoverable.

## Actions in Conspiracy

24.     Plaintiff incorporates all of the foregoing as if fully set forth herein.   What occurred in both the underlying cases shows why the legal industry has such a well-earned negative reputation.   It also shows the damage that is being done by allowing the obstruction of jury trials. This instant complaint was precipitated by the seditious actions of Defendants Judge, Feldman and Troy, during the litigation process against Defendant Feldman, and is incorporated herein by reference (Exhibit A).

25.     The entire process can only be described as a shill, conducted by a morally-bankrupt man posing as an honorable judge,  and two desperate lawyers, in attempts to circumvent a trial by jury.   The Defendants were determined to defeat the Plaintiff by any means necessary.   It must be kept in mind that all three Defendants have been lawyers for decades, and the Plaintiff is not formally trained, had no money and no assistance in the multiple cases she is now struggling with because of Defendant Feldman.

26.     The main obstacle to thwarting the case was Judge Wendy Demchick-Alloy, who was the presiding judge from its inception in October 2011, until her surreptitious replacement with Defendant Judge in January 2013.   This next order of business was to find a way to void Judge Demchick-Alloy's orders, which repeatedly sustained the Plaintiff's causes of action (Exhibit D). The Defendants did so in a criminal conspiracy under color of law.

27.     After the case was suddenly reassigned to Defendant Judge, Defendant Troy filed an "Answer" on January 4, 2013, after Judge Demchick-Alloy had already dismissed their related Preliminary Objections (Exhibit A et seq 74), to the Plaintiff's "Answer to their Counterclaim in Nature of Motion to Dismiss."

**28.**     The fact was they had no possible claim under **Rule 1031. Counterclaim.** *(a) The defendant may set forth in the answer under the heading "Counterclaim" any cause of action cognizable in a civil action which the defendant has against the plaintiff at the time of filing the answer."* There only recourse was the motion to dismiss, which had already been denied. There were no damages caused by the Plaintiff at any time to the Defendant. Their claims was for "frivolousness" of the complaint, which even it if were true in the remotest way, is not a civil action- it is responsive only. Their new matter also had no substance to it- it was purely to create filings for the Plaintiff. This is their constant and harassing behavior that is clearly illustrated herein.

29.     On March 20, 2013, Judge denied the Plaintiff's Motion, without a supporting Opinion (Exhibit A et. seq 82). In fact, Defendant Judge never wrote any opinions, except when ordered by the Appellate Court. The Counterclaim however, was never actually sustained and it remained outstanding.

## Manipulation By Issuing Disingenuous Trial Schedules

30.     Over the course of this scheme, Defendant Judge filed disingenuous trial schedules to divert the Plaintiff from filing appeals. He had no intention of ever providing a jury trial, and Defendants Troy and Feldman overtly refused to cooperate for years, free of sanctions.

31.     Plaintiff filed a "Motion for Change of Venue" on April 1, 2013 (Exhibit A et. seq 95), to which the Defendants vehemently objected. Before he ruled on the motion, Defendant Judge issued a trial schedule on June 25, 2013 (et seq 96). Plaintiff expected a jury trial, so she

therefore did not appeal it when he denied the motion on August 13, 2013 (Exhibit A et seq 98). The trial schedule had a discovery due date of March 1, 2014- an unusually long seven month delay, and in retrospect, both actions were tactic to drag out and manipulate the case.

32.    Plaintiff served several discovery requests, to which the Defendants filed continual frivolous boilerplate objections.  In fact, Plaintiff presented an email to the court, which was inadvertently attached to an email from Ashley Trotter, a lawyer on Defendant Troy's staff.   In the email Defendant Troy wrote to Ms. Trotter, regarding Plaintiff's discovery request the following: *"NB. Object and send via email letter in 29 days."*

33.    Undoubtedly "NB" stands for "no brainer," evidence that he was intentionally delaying and gaming the system (Exhibit E).  Plaintiff presented this email to Defendant Judge, who regardless denied the Plaintiff's Motion to Compel discovery.

34.    Since their Counterclaim was never adjudicated by Judge, the Defendants filed a "Praecipe to Enter Default Judgment" on January 16, 2014 (et seq 100), a "Petition for Default Judgment (et seq 188) on February 25, 2015, and then another New Matter and Counterclaim on December 7, 2015. Plaintiff had filed answers as best as was humanly possible given the content of their claim which was only about 12 lines long, on April 17, 2013 (et se 86) and amended it again on May 7, 2015 (et seq 244).

35.    On January 2, 2014, the Defendant Troy filed the first of <u>three</u> Motions for Judgment on the Pleadings.  The prevailing law which *states "Where a complaint states a legal cause of action, a motion for judgment on the pleadings is without merit, since it being in the nature of a demurrer attacks the sufficiency of the complaint"*. <u>Ley v. Canady and Sons, Inc. 60 Del. Co. 619 (Pa. C.P. 1973).</u>

36.     The legal sufficiency of the complaint had already been sustained by Judge Demchick-Alloy (Exhibits D). Defendant Judge therefore denied it in May 2014, but the Defendant filed another one on July 28, 2014, which he also had to deny because of Demchick's Orders.

## Collusion in Discovery Violations

37.     On or about January 28, 2014, Plaintiff had obtained a confirmed schedule for deposition of Defendant Feldman - while the first trial order was still standing.  It was to be conducted on February 24, 2014 at the Montgomery County Court House.

38.     On February 21, 2014, at 9:47 PM, which was the Friday night before the Monday deposition, Defendant Troy had his associate  send an email to the Plaintiff  stating that they *"had to cancel the deposition due to the outstanding Motion for Protective Order that was filed today. "*  She did not even attach that Motion to the email.  (Exhibit F).

39.     The Pennsylvania  Rules of Discovery clearly state with emphasis in its Note:

Pa. R.C.P. 231 § 4013

"The filing of a motion for a protective order shall not stay the deposition, production, entry on land or other discovery to which the motion is directed unless the court shall so order. The court for good cause shown may stay any or all proceedings in the action until disposition of the motion.

**NOTE: The automatic stay under former Rule 4013 presented the possibility of misuse.... The amendment therefore abolishes all automatic stay and adopts the federal practice requiring a stay order in all cases... This is not a matter limited to protective orders; it cuts across the whole field of obstructive and dilatory tactics to frustrate discovery. "**

40.     Plaintiff took off of work, and drove the 20 miles to the Court House on Monday, February 24th as scheduled, thinking the email may have been a tactic to claim she did not show at her own deposition.   She sat with the Court Reporter waiting for the Defendants, neither of whom came.  Plaintiff had to pay a fee to the Court Reporter.

41.     On April 10, 2014, Judge Bernard Moore filed an order to Strike their February 21, 2014 Motion for Protective Order, the reason cited as it appeared on the Rule Returnable list for March 31, 2014 with no Certification of Service to the Plaintiff, and in fact it was never served on her. (Exhibit G- ( on Exhibit A et.seq 121))

42.     Defendants filed two more Motions for Protective Orders against Discovery on April 15, and May 14, 2014, in response to attempts to schedule depositions, one of which they withdrew on May 20, 2014.  One Defendant Judge inexplicably granted, when there was a trial schedule standing, and Plaintiff had a necessity to depose the Defendant.

43.     On March 27, 2015, approximately four years into the case, the Defendants filed a Motion for Reconsideration of the Preliminary Objections to the Complaint ( et seq 216) denied in the Order of April 27, 2012 by Judge Demchick-Alloy (et seq 31).

44.     Presumably, Defendants mistakenly thought Defendant Judge would rule on it, however, under the collateral order rule, it went back to Judge Demchick-Alloy.  She responded very adamantly with a detailed Opinion and Order again denying the Defendant's Demurrer and Preliminary Objections (Exhibit D (on Exhibit A et seq 222).

45.     On May 16, 2014, Defendant Judge inexplicably vacated the trial schedule of June 25, 2013. On that same day, in response to Defendants frivolous motions that a second amendment complaint had been improperly submitted under Judge Demchick-Alloy, he granted a "leave to amend" the Plaintiff's complaint.  This was later retracted by the Defendants as their own error, after years of harassment by them, but regardless the Plaintiff did not refile as she suspected it was a ploy to subject her complaint for dismissal under Defendant Judge (Exhibit A et seq 131-132).

**Second Manipulative Trial Schedule**

46.     At the hearing held on May 11, 2015 in front of Defendant Judge, Defendants claimed because they had an outstanding Motion for Protective Order and Judgment on the Pleadings, they did not have to attend the deposition.  There was no order to stay discovery by Defendant Judge, therefore  Plaintiff filed a Motion for Sanctions, which he denied.

47.     Plaintiff filed a Motion for Reconsideration for Sanctions regarding the failure to show at the deposition.  Four months passed before Plaintiff's Motion was addressed at a hearing held on December 18, 2014, again when Defendant Judge denied the Motion, and  he again issued another disingenuous trial schedule (Exhibit A at seq.  157 ) ) with another prolonged discovery period of six months with a due date of June 1, 2015.

48.     Plaintiff however was not deterred this time and appealed the denial for sanctions on January 20, 2015, which was quashed by the Appellate court as being interlocutory, on June 2, 2015. (Exhibit A - et seq. 256). All three Defendants filed to dismiss the appeal as interlocutory. Although it was quashed and never reviewed on its merits, it did produce the only opinion Defendant Judge had written up to this point, under the pressure of Pa.R.A.P. 1925 - in response to Plaintiff's Concise Statement of Errors.  The pretext in it speaks for itself (Exhibit H ).

49.     However, while Defendant Judge had no jurisdiction during that time under Appellate rules, he continued to issue orders regardless. (Exhibit A - et seq.  230, 252, 253, 254), to quash subpoenas that the Plaintiff had filed for two Judges involved in her divorce action.

50.     Plaintiff filed a Petition to Proceed *Informa Pauperis* on February 8, 2015, to which the Defendant's filed an impertinent, vexatious Objection (et.seq 176), stating that Plaintiff should not be allowed to continue to file, and essentially her right to due process and equal protection under the law should be denied. Defendant Judge did not address that petition for five months, until June 23, 2015.

51.     It goes without saying, that what was occurring was a complete mockery of the law.  Not only was Defendant Judge allow frivolous gaming of the system and violation of the rules, but he was participating. Plaintiff filed for Leave to Join Defendant Paul Troy as a Defendant in the action for abuse of process on March 22, 2015 (et seq 207) (initially filed inappropriately as a writ to join on January 8, 2015, which was withdrawn). Kristy Castagna, Esq. then entered here appearance to represent Defendant Troy.  This was not ruled on until June 23, 2015.

52.     On December 18, 2014 at the issuing of the second disingenuous trial schedule, Defendant Judge also denied the Plaintiff's Second Motion to Dismiss the Defendant's still unsustained Counterclaim, from August 26, 2014- four months previously.  Judge Demchick-Alloy had already denied Defendants' Preliminary Objections to Plaintiff's Motion to Strike their Counterclaim (2011-25251 Seq. Demchick Order).

53.     Defendants filed a third Motion for Default on the Counterclaim pursuant to Pa Rule 233.1 which does not provide a Counterclaim as a remedy. The remedy is a Motion to Dismiss and can only be granted if - *(1)  the pro se plaintiff is alleging the same or related claims which the pro se plaintiff raised in a prior action against the same or related defendants."*  Defendant Troy had previously tried to argue that because Defendant Feldman was not disqualified from the divorce upon the Plaintiff's request to the Judge that was then removed, that the civil action against her was *res judicata*.

54.     Defendant Judge never addressed the substance of the  January 16, 2014 and February 25, 2015 - Default Judgment on the Counterclaim (Exhibit A -Seq Nos.100 and 188 ).   Yet Defendant Judge granted their third Motion over two years after the first and a year after the second, with no opinion again, however in the attached second appellate opinion he was forced to submit, he falsely claimed there was "new" evidence, and therefore he could re-litigate Judge Demchick-Alloy's decisions (Exhibit I) and grant a Judgment on the Pleadings.

55.    Pa.R.C.P. 1030. New Matter states *"A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading."* There was no evidence or matters that Defendants presented, they were just more denials of the Plaintiffs pleading.  . This was purely a part of their conspiracy to find a way for Defendant Judge to assist them in defeating the law suit, by labeling it new matter.

56.    Upon this second trial scheduling, Plaintiff again resent requests for discovery on April 23, 2015, whereby the Defendants Troy claimed falsely at a hearing held on May 11, 2015,  that he had cooperated with discovery. In fact, he had not sent the discovery.   An envelope post marked two days later arrived at Plaintiff's home, full of  boiler plate objections, and copies of irrelevant previously filed items with fake certificates of service attached, indicating they had delivered it before.  Their discovery was never filed on the docket, and there would not have been certificates of service.

57.    Between March 27  and  April 15, 2015 - the Defendants filed a barrage of six frivolous, duplicative, motions, trying to provide Defendant Judge with mechanisms to  dismiss the case. The six filings in a three week period were:

| | | | |
|---|---|---|---|
| 210  E 3/27/2015 | Motion | BY RANDEE FELDMAN MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH MEMORANDUM OF LAW WITH SERVICE ON | |
| 213  E 3/27/2015 | Motion | BY RANDEE FELDMAN MOTION FOR RECONSIDERATION OF THE OCTOBER 10, 2014 ORDER DENYING DEFENDANT FELDMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS DATED JULY 28, 2014 | |
| 216  E 3/27/2015 | Motion | BY RANDEE FELDMAN MOTION FOR RECONSIDERATION OF THE APRIL 27, 2012 ORDER DENYING DEFENDANT FELDMAN'S PRELIMINARY OBJECTIONS TO PLAINTIFF'S AMENDED COMPLAINT WITH | |
| 223  E 4/7/2015 | Motion | BY RANDEE FELDMAN MOTION FOR SANCTIONS PURSUANT TO RULES 1023.1(C) AND 1023.2(B) RELATED TO PLAINTIFF'S MOTION TO DISMISS AND FOR SANTIONS (AGAIN) WITH MEMORANDUM OF LAW WITH SERVICE ON 04/07/2015 | |

226 E 4/8/2015   Motion   FOR JUDGMENT ON THE PLEADINGS  BY RANDEE FELDMAN WITH
                          MEMORANDUM OF LAW WITH SERVICE ON 04/08/2015

231 E 4/15/2015  Motion   BY RANDEE FELDMAN DEFENDANT RANDEE FELDMAN, ESQUIRE'S
                          MOTION FOR A PROTECTIVE ORDER WITH MEMORANDUM OF LAW
                          WITH SERVICE ON 04/15/2015

58.     On April 11, 2015, Plaintiff filed against the insane bombardment of redundant filings, a
"Motion For Protective Order, Sanctions And To Strike Defendants Filings With Memorandum
Of Law. (et seq 229).

59.     On April 15, 2015 the Defendants filed a third Motion for Protective order to stay
discovery, but on the same day sent their own requests for discovery and for a pretrial witness
list to the Plaintiff. On that Defendant Judge also sent an order for hearing to be held May 11,
2015. None of the hearings scheduled in this matter appear on the official court online calendar.

60.     Plaintiff complied with the Defendants' discovery requests, including the names of two
Judges on April 23, 2015. and added her key witness on the May 9th. (Exhibit J Email to and
from Troy for Interrogatories; 2011-25251 Seq. 231).

61.     **On   May 19th, after they obtained the witness information, Defendant Judge
pretentiously denied their third April 15, 2015 Motion for Protective order on May 19th,
but then granted the one they filed two days previously on May 15th.** He never addressed
the outstanding protective order of the Plaintiff which had been filed first.

62.     On May 14, 2015, Plaintiff emailed Defendant Troy regarding the unanswered attempt to
schedule another deposition for May 20th of Defendant Feldman- under the second active trial
scheduling.  One week before Defendant Judge granted their protective order, and quashed all
subpoenas, Defendant Troy sent the attached email to the Plaintiff, (Exhibit K- Troy Emails)
Defendant Troy wrote:   *"I may or may not be back from a deposition in Dallas that occurs the
day before. Also, the rulings from Monday's arguments may determine whether depositions are*

*necessary, and if so where they will be held."* Plaintiff demanded Defendant Troy produce plane tickets regarding May 20th, in response to the below claim. He has never complied.

63.    Plaintiff alleges this was a key time when he was discussing with Defendant Judge, how to throw the case. Defendant Troy's response indicates he was confident that there would again, be no depositions. It would be obvious to a jury what was going here; the case was being discussed *ex parte* between Defendant Judge and Troy.

64.    Defendant Troy filed a **fourth** "Motion for Protective Order of May 15, 2015", ( et seq 213) *after they obtained the Plaintiff's witness list.*

65.    On May 22, 2015, Plaintiff received an email from Defendant Judge's law clerk, Samantha Fagnan stating *"Please be advised that Defendant's Motion for Protective Order (seq. 231) will be Granted and any deposition of Ms. Feldman currently scheduled will not go forward until the disposition of the outstanding motions in this matter. Depending on the disposition of those motions, Judge Haaz may compel the deposition of Ms. Feldman in the future. The discovery deadline will also be extended to accommodate the parties.."* (Exhibit L)

66.    Defendant Judge filed the Protective order, while still not addressing the Plaintiff's Protective motion, and he included another bogus  order of an extension of discovery for 90 days, which was unjustified and made no sense whatsoever, as there was now a protective order for the Defendants.  (Exhibit M Order-extending discovery and granting protective order)

67.    Plaintiff had received multiple emails over months, from her key witness, expressing her willingness to participate in support of the case.  Then suddenly on Sunday, **May 31, 2015**, the witness sent Plaintiff an email that her attorney contacted her and told  her not to testify and to remove her from the witness list.  Plaintiff asked her witness if she went to her attorney or her attorney approached her first, but she did not to respond. (Exhibit  N). The Plaintiff did not want to pressure her, so she did not contact her again.

68.     It was not until Wednesday, February 24, 2016, that the witness sent a text message asking Plaintiff to call her.  The witness told her that Defendant Troy had called her attorney and he threatened to interrogate her in a "special" deposition, outside of the discovery process.  Her attorney then advised her it would not be good for her own ongoing divorce to be involved with the case.  She stated she felt very intimidated by the situation, but now as Defendant Feldman's harassment and misconduct in her own case had escalated, she was willing to serve as a witness.

69.     Plaintiff alleges Defendant Judge ordered trial schedules purely in a conspiracy with the Defendants as a ploy for the Plaintiff to reveal her witnesses, so that Defendant Troy could intimidate her into not testifying.  The witness' husband is represented by Defendant Feldman.

70.     Plaintiff alleges the three Defendants discussed a method to defeat Judge Demchick-Alloys ruling.   On December 7, 2015 the Defendants filed their third "New Matter and Counterclaim," and Defendant Judge claimed that gave him the authority to now grant the third Defendants Judgment on the Pleadings.

71.     Notwithstanding the fact that there was no new matter- a Judgment on the Pleadings is not subject to evidence and facts of the case, it is only a matter of the sufficiency of the law with regard to the complaint; Defendant Judge was breaking the rules to get around Judge Demchick-Alloy's order.

72.     Defendant Judge decided retroactively in his June 23, 2015 barrage of final orders, that the pleadings were actually closed January 2015, although he had never mentioned this before when the Defendants had filed two Motions for Judgment on the Pleadings in 2014. They are not to be filed unless the pleadings are close, but Plaintiff was unaware of that at the time. Defendant Judge had a duty to have stated that  a year ago. Now is was stating that they had been untimely,    as the pretext for his denying them at that time in addition to a Demurrer on September 29, 2011, had already been by Judge Demchick-Alloy.

73.     On June 12, 2015, Defendant Judge issued an Order for a hearing to be held 10 days later, on June 23, 2015.  The order stated the hearing was to address the Plaintiff's five month old Petition for *Informa Pauperis*.  None of Defendant Judge's late disposition were reported on his Pa.R.C.P 703 reports.  (Exhibit O)

74.     At the hearing on Tuesday, June 23, 2015, at 9:30 AM Defendant Judge enters the court with a two foot high pile of folders and states that he is going to address all of the nine outstanding motions, with no notice to Plaintiff.  Seven of the motions, were the Defendants.  This was clearly an intention to deceive and disadvantage the Plaintiff. .

75.     The following week, Plaintiff received nine orders, <u>all signed June 23rd, the same day of the hearing,</u> (most likely signed before the hearing)  and all in favor of the Defendants, except he granted the Plaintiff's Petition for Informal Pauperis.

76.     None of the orders were filed on the electronic docket until Friday, June 26th.  Two were listed as mailed June 26th and seven on Sunday, June 29th but all signed June 23rd. (<u>Exhibit A</u> et seq.. 259 to 267)

77.     Plaintiff alleges all three Defendants were discussing this entire case and arranging compensation for  Defendant Judge, otherwise he would have responded to the attached request for disclosure sent to him by the Plaintiff on October 20, 2015. (Exhibit P )

78.     On August 26, 2016, Plaintiff requested the financials of Defendant Judge from the Administration of Pennsylvania Courts.  She has done so several times since and still has not received them, although there is a standing Order from the Supreme Court that if they do not comply, they are to be reported to the Judicial Conduct Board.  (Exhibit Q)

79.     Plaintiff appealed four of the June 23, 2015 Orders:  Plaintiff Motions for Joinder and Motion to Dismiss Counterclaim, the Defendants Motions for Default on the Counterclaim, and

Judgment on Pleadings. Defendant Troy filed to quash the Appeals claiming the order were not final because he had not yet had a hearing to assess their damages under the Counterclaim.

80.     On January 28, 2016, Defendant Troy and Feldman withdrew the Counterclaim (#2011-25251 et seq 291), incriminating Defendant Judge in conspiracy even further.  He had to have been aware that the Defendant's Counterclaim had neither merit nor basis under law, yet he continued to proceed to enter a default judgment in their favor without ever addressing the merits of it.

## Opinion Machinated in Fraud by Defendant Judge to Defeat the  Law of the Case Doctrine

81.     Defendant Judge claims he had a right three years later in 2015, to overthrow Judge Demchick-Alloys three denials of the Defendants Motions to Dismiss the Complaint, and sustaining of the Plaintiff's causes of action, by granting a Judgment on the Pleadings that he himself had already denied TWICE- based on the 2012 New Matter that was on the record all those years.  Never once did he mention anything about those filings being improper because the pleadings were not closed, until his Opinion to the appeals court in 2015.   Instead, he allowed Defendant Troy to charge the insurance liability company likely in the tens of thousands of dollar, to file what is visibly scores of frivolous filings, and waste years of the Plaintiff's life.

82.     Defendant Judge exceeded his jurisdiction in litigating issues that are on open on appeal in the Plaintiff's equitable distribution in her divorce matter.   Particularly assuming that Defendants claim that the husband had not skipped support payments that drove the home into foreclosure, stating even if Defendant Feldman instructed him to do so, "there was no harm done."  He has no knowledge of the actual facts behind the illusion created by a fake W-2 Defendant Feldman submitted, and he contradicts himself in the same paragraph admitting that "only two payments were skipped."  Those two payments were enough to have the mortgage go

into default.  This is only one example of the treasonous act in Defendant Judge' attempt to support the schemes of the other two Defendants.

83.    Defendant Judge never wrote any Opinions with any of his orders intentionally to dupe the Plaintiff, and then he submits statements that is decisions were on the "merits" when there was never any supporting law to even one ruling. He then claims Plaintiff waived her right to appeal because she could not put what "errors" she was complaining about in her concise statement, which she so stated in her concise statement.  Pa.R.C.P.  Rule 1925(a) specifically states that a judge is either to write an Opinion or  to point out in the record the basis for his decisions *before* filing a Rule 1925(b). The rule makes that clear - it is why the authors labeled one (a) and the other (b) according to the alphabet.

84.    Of course, the entire objective was to make sure a jury would not see anything in this case. While he granted a Judgment on the Pleadings and a Default on Counterclaim, he has never dismissed the Plaintiff's Complaint, nor has he scheduled a trial.  However, he is in charge of disposing the 5000 case backlog in Montgomery County that resulted from just this kind of sordid, treasonous, criminal behavior that has been occurring there because of people like him that managed to get onto the bench.

85.    The U.S. Supreme Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original].  Defendant Judge should not be afforded any judicial immunity for his acts against the Plaintiff that violated her civil rights under the U.S. Constitution.

### Count I - Claim Pursuant To 42 U.S. Code § 1981, 1983 and 1985

#### Plaintiff vs Defendant Judge Richard Haaz

##### Request for Declaratory Relief

Plaintiff incorporates the all of the foregoing as if fully set forth fully herein.

1.      Defendant committed the above acts aforesaid under color of state law in an Administrative Capacity, as well as a Judicial Capacity.

2.      The above actions involved a violation of United States Constitutional rights pursuant to Amendments provision related to due process.

3.      Defendant is bound by his oaths of office under the U.S. and Pennsylvania State Constitutions.

4.      Defendant, as stated above, abuse his power in a broad attempt to discredit and violate the rights of the Plaintiff.

5.      There was never any factual or legal support for Defendant's actions and they were undertaken with malice and for no legitimate purpose.

6.      The proceedings were rather used to willfully and maliciously deceive the Plaintiff, and deprive her of due process in a conspiracy with the co-Defendants.

7.      But for the position and status in the courts held by Defendant, he would not have been able to use the legal process in actions against Plaintiff.

8.      As a direct and proximate result of the abuse of power by the Defendant, Plaintiff has suffered severe economic and personal harm as aforesaid.

9.      No other declaratory relief is available, as the Pennsylvania Judiciary Disciplinary

Council  in the state of Pennsylvania, do not provide any such relief  or remedy to victims of

judicial corruption.

WHEREFORE,   Plaintiff demands relief against the Defendants in the form of a declaratory

judgment establishing the exceeding of his jurisdiction and the lack of constitutionality of Judge

Richard Haaz's actions and that he knowingly and willingly  violated his oath of office, in

validation of the charges in this complaint.

## Count II  - Claim Pursuant To

## Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)

## Plaintiff v. Defendant Richard Haaz

Plaintiff incorporates the foregoing as if  fully set forth fully herein.

10.      The U.S. Supreme Court holds that :

"when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes
into conflict with the superior authority of that Constitution, and he is in that case stripped of his official
or representative character and is subjected in his person to the consequences of his individual conduct.
The State has no power to impart to him any immunity from responsibility to the supreme authority of
the United States." [Emphasis supplied in original].  Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687
(1974)

11.      Defendant is bound by State Law in Pennsylvania, which are subservient to the U.S.

Constitution under the Supremacy Claus.

12.      Defendants, as stated above, utilized several proceedings in a broad attempt to discredit

Plaintiff and violated her civil rights under the Federal Constitution.

13.      The proceedings were rather used to willfully and maliciously harass and deceive the

Plaintiff.

14.     But for the positions and status in the courts held by Defendant, he would not have been able to use the legal process in  actions against Plaintiff.

15.     As a direct and proximate result of the abuse of process of Defendant, Plaintiff has suffered severe economic and personal harm and emotional distress as aforesaid.

WHEREFORE,  Plaintiff demands judgment against Defendant Judge in the form of punitive and compensatory damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

### Count III  - Claim Pursuant To 42 U.S. Code § 1981, 1983 and 1985

### Plaintiff v. Defendant Paul Troy

Plaintiff incorporates the foregoing as if  fully set forth fully herein.

16.     Defendant is bound by his oaths of office under the U.S. and Pennsylvania State Constitutions.

17.     Defendants, as stated above, utilized several proceedings in a broad attempt to discredit Plaintiff.

18.     The proceedings were rather used to willfully and maliciously harass and deceive the Plaintiff.

19.     But for the positions and status in the courts held by Defendants, they would not have been able to use the legal process in  their actions against Plaintiff.

20.     As a direct and proximate result of the abuse of process of Defendants, Plaintiff has suffered severe economic and personal harm and emotional distress as aforesaid.

WHEREFORE,  Plaintiff demands judgment against Defendant Paul Troy in the form of punitive and compensatory damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

### Count IV - Claim Pursuant to 42 U.S. Code § 1981, 1983 and 1985

## Plaintiff v Defendant Randee Feldman

Plaintiff incorporates the foregoing as if fully set forth fully herein.

21.     Defendant is bound by his oaths of office under the U.S. and Pennsylvania State Constitutions.

22.     Defendants, as stated above, utilized several proceedings in a broad attempt to discredit Plaintiff.

23.     The proceedings were rather used to willfully and maliciously harass and deceive the Plaintiff.

24.     But for the positions and status in the courts held by Defendants, they would not have been able to use the legal process in their actions against Plaintiff.

25.     As a direct and proximate result of the abuse of process of Defendants, Plaintiff has suffered severe economic and personal harm and emotional distress as aforesaid.

WHEREFORE, Plaintiff demands judgment against Defendant Randee Feldman in the form of punitive and compensatory damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## Count V - Claim Pursuant to 42 PA.C.S. § 8522, 42 U.S. Code § 1981, 1983 and 1985

### Plaintiff v Montgomery County

Plaintiff incorporates the foregoing as if fully set forth fully herein.

26.     Defendant as the employer of the people of the Montgomery County Prothonotary and its Judges, was negligent in its perpetuation of procedures that caused harm to the Plaintiff.

27.     As a direct and proximate result of the negligence in failure to resolve what were obvious procedures that were damaging the citizens of Montgomery County, Plaintiff has suffered severe economic and personal harm and emotional distress as aforesaid.

28.    In 2007 the Montgomery County Courts came into control of the Plaintiff's assets and were responsible for the stewardship of those assets, which were dissipated by the actions of the Defendant's through procedures that were long over due for audit and correction, yet the County failed to protect its citizens from malice of various officials in its courts.

WHEREFORE,  Plaintiff demands judgment against Defendant Randee Feldman in the form of punitive and compensatory damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

## Verification

I, Diane R. Gochin  verify that the statements herein are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of 18 PA C.S. Section 4904, relating to unsworn falsification to authorities.

Signature

*Diane R. G*

Date:  10/11/16

## EXHIBITS

**Due to the prohibitive costs of printing and the fact that all Defendants either already have or have free access to them, many of the exhibits are only cited and referred to on the dockets provided, and not included in their entirety.  Any documents not on the record previously are attached.**

**Exhibit A- Docket Montco #2011-25251**
**Exhibit B- Docket Montco #2007-12909**
**Exhibit C- Legal Intelligencer Article**
**Exhibit D- Judge Demchick-Alloy Orders**
**Exhibit E- Defendant Troy NB Email**
**Exhibit F- Trotter Email**
**Exhibit G- Judge Moore Order**
**Exhibit H- Judge Haaz Appellate Response**
**Exhibit I-  Judge Haaz Final Opinion**

**Exhibit J- Interrogatory emails**
**Exhibit K- Defendant Troy Emails Re: Deposition Schedule**
**Exhibit L- Judge Haaz Secretary Fagnan Email**
**Exhibit M- Judge Haaz Order again Extending Discovery and Protective Order**
**Exhibit N- Witness Emails**
**Exhibit O- Defendant Haaz June 12, 2015 Order for Informa Pauperis Hearing**
**Exhibit P- Request for Disclosure**
**Exhibit Q- AOPC DePasquale Emails**